| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | NOT FOR PUBLICATION |
| ------------------------------------------------------------x | |
| In re: : | Case No. 22-11370 (JLG) |
| : | |
| New Noodle 28 Inc., : | Chapter 7 |
| : | |
| Debtor. : | |
| ------------------------------------------------------------x | |

**MEMORANDUM DECISION GRANTING THE CHAPTER 7 TRUSTEE'S MOTION PURSUANT TO FED. R. BANKR. P. 9019(a) AND SECTION 105 OF THE BANKRUPTCY CODE FOR APPROVAL OF SETTLEMENT**

**APPEARANCES:**

Tarter Krinsky & Drogin LLP
*Counsel to the Chapter 7 Trustee,*
*Deborah J. Piazza*
1350 Broadway, 11th Floor
New York, New York 10018
By:    Michael Brownstein

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

## INTRODUCTION

Deborah J. Piazza is the chapter 7 trustee (the "Trustee") of the estate of New Noodle 28 Inc. ("Debtor"), a chapter 7 debtor herein. After her appointment, the Trustee and her retained professionals conducted an in-depth review of the Debtor's books and records and related documents. Based upon that review, the Trustee determined that the Debtor's estate (the "Estate") holds claims against the Debtor's principal, Ji Yang (the "Debtor's Principal"), in excess of $400,000 (the "Estate Claims"). The Trustee has not commenced litigation to liquidate those claims. Instead, she and her retained professionals have engaged in negotiations with the Debtor's Principal and his counsel in an effort to resolve the Estate Claims.

Those efforts paid off. The matter before the Court is the Trustee's motion (the "Motion")[1] pursuant to section 105 of title 11 of the United States Code (the "Bankruptcy Code") and Federal Rule of Bankruptcy Procedure 9019 seeking the approval of an agreement (the "Settlement Agreement")[2] between the Trustee, in her fiduciary capacity, and the Debtor's Principal, resolving the Estate Claims against the principal. No responses have been filed to the Motion.

On November 13, 2024, the Court conducted a hearing on the Motion. The Trustee appeared through counsel. The Court heard argument from the Trustee. For the reasons set forth herein, the Court grants the Motion.

## JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## BACKGROUND[3]

On October 13, 2022 ("Petition Date"), the Debtor filed a voluntary petition ("Petition")[4] for relief under chapter 7 of the Bankruptcy Code ("Chapter 7 Case") in this Court. On October 13, 2022, the Trustee was appointed as interim trustee to the case.[5] She is now acting as the permanent trustee of the Estate.

---

[1] *Chapter 7 Trustee's Motion Pursuant to Fed. R. Bankr. P. 9019(a) and Section 105 of the Bankruptcy Code for Approval of Settlement Agreement*, ECF No. 36, pp. 4-17. References to "ECF No. __" are to documents filed on the electronic docket of Case No. 22-11370.

[2] The Settlement Agreement is annexed as Exhibit A to the Motion.

[3] The facts are set forth in the Motion. They are undisputed.

[4] *Voluntary Petition for Non-Individuals Filing for Bankruptcy*, ECF No. 1.

[5] *Notice of Chapter 7 Bankruptcy Case*, ECF No. 2, ¶ 5.

2

The Debtor formerly operated a restaurant business, but closed the business and ceased operations prior to the Petition Date. Motion ¶¶ 8-9. After her appointment, the Trustee and her professionals reviewed the Debtor's books and records and related documents, including various financial disclosures from the Debtor and Debtor's Principal. *Id*. ¶ 10. They discovered unexplained cash withdrawals by the Debtor's Principal totaling $291,000 ("Withdrawals"), and unexplained payments from the Debtor, at the Debtor's Principal's behest, to certain of the Debtor's alleged suppliers, aggregating $108,000 ("Supplier Payments"). *Id*. ¶¶ 1, 9. The Trustee maintains the Withdrawals and Supplier Payments give rise to various claims against the Debtor's Principal, including claims based on avoidable transfers, conversion and misuse of funds, and improper stock distributions, which the Trustee may prosecute for the benefit of the Estate, *inter alia*, as fraudulent transfers avoidable under the New York Debtor and Creditor Law and the Bankruptcy Code and/or improper stock distributions under relevant New York law. *Id*. ¶ 1.

In conducting her diligence, the Trustee also determined that the Debtor's Principal is employed at a restaurant in New Hampshire, where he earns between $3,200 and $3,500 per month, and has limited assets other than the property he resides in, which he jointly owns with his spouse. *Id*. ¶ 10.

After completing her review of the Debtor's operations and the Estate Claims, the Trustee, with the assistance of her retained professionals, engaged in extensive and highly contested settlement negotiations with the Debtor's Principal and his counsel. *Id*. ¶¶ 2, 10. As part of those discussions, the parties entered into an agreement to toll the statute of limitations, extending the time to file potential claims until March 31, 2025.[6] These negotiations were successful, and on

---

[6] *Stipulation Regarding Tolling Agreement of Statutes of Limitation*, ECF No. 35.

3

September 12, 2024, the Trustee and Debtor's Principal executed the Settlement Agreement. *Id.* ¶ 2; Settlement Agreement at 10.

**The Settlement Agreement**

The terms of the Settlement Agreement provide, in relevant part:

a. The Debtor's Principal shall pay the Trustee, on behalf of the Estate, a sum of $125,000 ("Settlement Amount") in full settlement of the Estate Claims. Settlement Agreement ¶ 3.

b. The Debtor's Principal shall pay the Settlement Amount to the Trustee in installments as follows: (i) $7,500 due on or before July 31, 2024; (ii) $7,500 due on or before August 31, 2024; and (iii) $4,583.33 due on or before September 30, 2024, and due every 30 days thereafter until the Settlement Amount is paid in full. *Id.* ¶¶ 5(a)-(c). The Trustee acknowledges receipt of the first two installments, in the total amount of $15,000, which the Trustee is holding in escrow. Motion ¶ 12(a).

c. In the event the Debtor's Principal fails to pay an installment in full by the due date ("Default") and fails to cure the Default within ten business days of receiving a Notice of Default from the Trustee, the Settlement Amount will increase by $175,000, for a total amount of $300,000, less any prior payments ("Default Amount"). Settlement Agreement ¶ 6. The Default Amount will be immediately due and payable to the Trustee and the Debtor's Principal consents to the entry of a judgment, by notice of presentment, in favor of the Trustee in the amount of the remaining balance of the Default Amount. *Id.* ¶¶ 6-7. Any prior payments made by the Debtor's Principal will be retained by the Trustee as a credit toward any future judgment obtained by the Trustee. *Id.* ¶ 5(e).

d. Once the Trustee has received the full Settlement Amount or, if applicable, the Default Amount, the Trustee will release the Debtor's Principal from "all claims, causes of action, suits, damages, liens, demands, obligations and/or liabilities with respect to the [Estate] Claims." *Id.* ¶ 9.

e. As of the Effective Date[7] of the Settlement Agreement, the Debtor's Principal will release, acquit, and discharge "the Trustee and her professionals, agents and representatives, and the Debtor's [E]state, from all claims, causes of action,

---

[7] The Effective Date is the date of a "Final Order" of the Court approving the Settlement Agreement. Settlement Agreement ¶ 2. "Final Order" is defined as an order fully approving the Trustee's entry into the Settlement Agreement that has not been "reversed, stayed, modified or amended" and for which "(i) any appeal, rehearing or other review has been finally determined or dismissed in a manner that does not affect the [Settlement Agreement]; or (ii) the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been filed." *Id.*

4

      suits, damages, liens, demands, obligations and/or liabilities that relate in any way to the Debtor and the Estate, including any claims under 11 U.S.C. § 502(h) and any other general unsecured, priority or administrative claims. Further, the [Debtor's Principal] waives, withdraws and agrees not assert any claims against the Trustee and/or the Estate." *Id.* ¶ 8.

f.  If the Court denies approval of the Settlement Agreement, the Trustee shall return any payments received from the Debtor's Principal, except for the $15,000 in escrow, which will be retained by the Trustee on behalf of the Estate. *Id.* ¶ 13.

g.  The running of the statute of limitations applicable to the Estate Claims is tolled and suspended until the earlier of March 31, 2027, or the date in which the Trustee receives the full Settlement Amount or, upon an uncured Default, the full Default Amount. *Id.* ¶ 10.

## **The Motion**

The Trustee asserts that she has canvassed the matters at issue in the settlement and has determined that the settlement does not fall below the lowest point in the range of reasonableness. Motion ¶ 21. She maintains that, in her best business judgment, the Settlement Agreement is fair and equitable and in the best interests of the Estate. *Id.* ¶ 11. She states that the Settlement Agreement benefits the Estate and its creditors because it provides certain recovery to the Estate sufficient to pay administrative expenses, priority claims, and a portion of the general unsecured claims. *Id.* ¶¶ 1-2, 22.

The Trustee maintains that the Estate Claims are meritorious, but explains that it is unlikely that the Estate could collect a judgment against the Debtor's Principal due to his modest financial condition. *Id.* ¶¶ 10, 25. She asserts that approval of the Settlement Agreement is in the best interests of the Estate because it will yield a substantial return on account of the Estate Claims in a short period of time. *Id.* ¶ 25. Therefore, upon performing a cost/benefit analysis, the Trustee finds that the Settlement Agreement is in the best interests of the Estate. *Id.*

5

## **LEGAL PRINCIPLES**

Bankruptcy Rule 9019 grants the bankruptcy court authority to approve the settlement of legitimate disputes in bankruptcy cases. As relevant it provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). Section 105 states that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). As a general matter, "[s]ettlements and compromises are favored in bankruptcy as they minimize costly litigation and further parties' interests in expediting the administration of the bankruptcy estate." *In re Dewey & LeBoeuf LLP*, 478 B.R. 627, 640 (Bankr. S.D.N.Y. 2012) (quoting *In re MF Global Inc.*, No. 11-2790, 2012 WL 3242533, at *5 (Bankr. S.D.N.Y Aug. 10, 2012)); *see also Motorola, Inc. v. Official Comm. of Unsecured Creditors* (*In re Iridium Operating LLC*), 478 F.3d 452, 455 (2d Cir. 2007) (stating that settlements are important in bankruptcy because they "help clear a path for the efficient administration of the bankrupt estate"); *In re Chemtura Corp.*, 439 B.R. 561, 595 (Bankr. S.D.N.Y. 2010) ("As a general matter, settlements or compromises are favored in bankruptcy and, in fact, encouraged.").

A court cannot approve a proposed settlement unless it finds that it is fair and equitable, and in the best interests of the estate. *See In re Drexel Burnham Lambert Grp., Inc.*, 134 B.R. 493, 496 (Bankr. S.D.N.Y. 1991) (citing *Protective Comm. for Indep. Stockholders of TMT Trailers Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)); *Air Line Pilots Assoc. v. Am. Nat'l Bank & Trust Co. of Chi.* (*In re Ionosphere Clubs, Inc.*), 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994). In assessing whether a settlement is fair and equitable, the court must "apprise[] [itself] of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated. Further, the judge should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting

6

on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise." *TMT Trailers Ferry*, 390 U.S. at 424.

In making that determination, "[i]t is not necessary for the court to conduct a 'mini-trial' of the facts or the merits underlying the dispute." *In re Adelphia Commc'ns Corp.*, 327 B.R. 143, 159 (Bankr. S.D.N.Y. 2005); *see also In re Soup Kitchen Int'l, Inc.,* 506 B.R. 29, 37 (Bankr. E.D.N.Y. 2014) (quoting *O'Connell v. Packles (In re Hilsen)*, 404 B.R. 58, 70 (Bankr. E.D.N.Y. 2009)) ("It is not the court's task to determine whether the settlement proposed by the parties is the best possible, or fairest, or most appropriate resolution of the dispute.") (internal quotation marks omitted). Rather, the court must only "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *In re W.T. Grant Co.,* 699 F.2d 599, 608 (2d Cir. 1983) (internal quotation marks omitted). The decision whether to approve a compromise is within the discretion of the bankruptcy court. *In re WorldCom, Inc.*, 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006).

The factors that courts in the Second Circuit weigh in determining whether a proposed settlement is "fair and equitable" are:

> (1) the balance between the litigation's possibility of success and the settlement's future benefits; (2) the likelihood of complex and protracted litigation, "with its attendant expense, inconvenience, and delay," including the difficulty in collecting on the judgment; (3) "the paramount interests of the creditors," including each affected class's relative benefits "and the degree to which creditors either do not object to or affirmatively support the proposed settlement"; (4) whether other parties in interest support the settlement; (5) the "competency and experience of counsel" supporting, and "[t]he experience and knowledge of the bankruptcy court judge" reviewing the settlement; (6) "the nature and breadth of releases to be obtained by officers and directors"; and (7) "the extent to which the settlement is the product of arm's length bargaining."

*In re Iridium Operating LLC*, 478 F.3d at 462 (quoting *In re WorldCom, Inc.*, 347 B.R. at 137).

7

As set forth below, application of those factors demonstrates that the Settlement Agreement is "fair and equitable."

## ANALYSIS

### (1) The balance between the litigation's possibility of success and the settlement's future benefits

The Settlement Agreement benefits the Estate by, *inter alia*, (i) resolving the Estate Claims and related disputes, (ii) providing the Estate with $125,000 for distribution and an immediate release from any of the Debtor's Principal's potential claims against it, (iii) conserving Estate resources; and (iv) advancing efficient administration of the Chapter 7 Case. *See* Motion ¶¶1-2. Application of the first *Iridium* Factor weighs in favor of approving the Settlement Agreement because the facts show that the Settlement Agreement's future benefits outweigh the likelihood of successful litigation. *In re Celsius Network LLC,* No. 22-10964, 2024 WL 4394507, at *11 (Bankr. S.D.N.Y. Oct. 3, 2024) ("The [s]ettlement's future benefits are clear and evident—it provides an immediate and certain resolution of the dispute with the [creditors], avoids further delayed distributions to [creditors], and facilitates implementation of the [p]lan."); *In re Soup Kitchen Int'l Inc.*, 506 B.R. at 44 (approving settlement that provided for certain recovery and avoided costly litigation).

### (2) The likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on the judgment

The record is clear that litigating the Estate Claims against the Debtor's Principal, such as fraudulent transfer, conversion, and misuse of funds and the issue of whether the Trustee may avoid the alleged transfers to the Debtor's Principal and the suppliers, will likely be complex, protracted and costly. Motion ¶¶ 25-27. Moreover, collecting a judgment against the Debtor's Principal is likely be difficult for the Trustee due to the Debtor's Principal's limited assets and financial resources. *Id*. ¶ 10. Both of those factors weigh in favor of approving the settlement. *Id*.

8

¶¶ 9-11. Application of the second *Iridium* Factor favors approval of the Settlement Agreement. *See In re DiStefano*, 654 B.R. 49, 56 (Bankr. N.D.N.Y. 2023) ("Most importantly, even if [the trustee] prevails on every litigated issue, there is a distinct possibility any judgment rendered would be uncollectable."); *In re Dewey & LeBoeuf LLP*, 478 B.R. at 643 (noting the "practical difficulties" in collecting a judgment); *In re Soup Kitchen Int'l Inc.*, 506 B.R. at 42 (discussing "the significant potential obstacles that the [t]rustee would face to recovery of those assets even if the litigation were successful.").

**(3) The paramount interests of the creditors and the degree to which creditors support the proposed settlement**

It is in the best interests of the creditors to resolve the Estate Claims and avoid significant costs and expenses that would deplete the Estate's assets and the amount available for distribution to the Estate's creditors. *See In re Wythe Berry Fee Owner LLC*, 660 B.R. 534, 565 (Bankr. S.D.N.Y. 2024) ("The [s]ettlement serves the interest of creditors as it offers a clear and definitive resolution of pending and anticipated litigation thereby conserving estate resources and offers a cash infusion [] into the [d]ebtor's estate."); *In re Dewey & LeBoeuf LLP*, 478 B.R. at 643 ("[T]he economics of this case and the uncertainty of future litigation strongly counsel that the [settlement agreements] are in the best interests of creditors."). The Trustee will use the proceeds of the Settlement Amount to pay administrative expenses and priority claims, and to make a distribution to general unsecured creditors. Motion ¶ 22. No party in interest in this Chapter 7 Case has objected to the Motion.[8] Application of the third *Iridium* Factor weighs in favor of approving the Settlement Agreement.

---

[8] *Trustee's Certificate of No Objection Regarding Chapter 7 Trustee's Motion Pursuant to Fed. R. Bankr. P. 9019(a) and Section 105 of the Bankruptcy Code for Approval of Settlement Agreement*, ECF No. 40.

9

**(4) Whether other parties in interest support the settlement**

Application of the fourth *Iridium* Factor is neutral, as no party in interest has responded to the Motion or otherwise expressed support for or opposition to the Motion. *In re DiStefano*, No. 16-10694, 2022 WL 4086979, at *6 (the fourth *Iridium* Factor did not weigh in favor of or against settling where no party in interest (other than the parties to the agreement and a creditor) had expressed support or opposition to the settlement).

**(5) The competency and experience of counsel supporting the settlement**

The Trustee is represented by competent bankruptcy counsel and accountants that carefully assisted her in analyzing the merits of the Estate Claims and the litigation risks in pursuing those claims. Motion ¶ 30. Indeed, her counsel is well-known to the Court as having represented numerous chapter 7 trustees in settling adversary proceedings and disputes involving complex claims like the Estate Claims. Moreover, the Debtor's Principal is represented by experienced bankruptcy counsel who has advised Debtor's Principal in connection with negotiation of the Settlement Agreement. *Id*. ¶ 32. Application of this factor supports approval of the Settlement Agreement. *See In re Wythe Berry Fee Owner LLC*, 660 B.R. at 567 ("The competency and experience of [d]ebtor's counsel and the presiding judge in this proceeding was not questioned by any party. Thus, the fifth *Iridium* Factor favors approval of the [s]ettlement."); *In re DiStefano*, 654 B.R. at 56 (finding the fifth factor supported approval of settlement where the parties' counsel had "years of experience in bankruptcy", had "engaged in or presided over complex litigation", and were "more than able to spot potential legal issues or factual pitfalls in their positions.").

**(6) The nature and breadth of releases to be obtained by officers and directors**

The Court finds that the Settlement Agreement includes customary, mutual releases between the Debtor's Principal and the Trustee that are "tailored to release only the claims as between these entities and are not designed to impact third party rights to pursue any direct claims

10

against the [Debtor's Principal] or for the [Debtor's Principal] to assert any defenses, if any." Motion ¶ 33. The Court finds that the releases are fair and essential to the Settlement Agreement. Accordingly, this factor weights in favor of approval of the Settlement Agreement. *See In re Celsius Network LLC*, 2024 WL 4394507, at *12 (the sixth *Iridium* Factor weighed in favor of settlement where the settlement releases were mutual, narrow in scope, and essential to the settlement agreement); *In re Wythe Berry Fee Owner LLC,* 660 B.R. at 567 ("The nature and breadth of the releases contained in the [s]ettlement [a]greement are fair and reasonable under the circumstances as (i) they provide certainty and finality to the [p]arties with respect to matters the [s]ettlement [a]greement resolves and (ii) were necessary to induce the [p]arties to enter into the [s]ettlement."); *In re Dewey & LeBoeuf LLP*, 478 B.R. at 644 (finding releases were reasonable and necessary to accomplish the purpose of the settlement where the agreement did not include any third-party, non-debtor releases and would not prevent non-debtor third-parties or non-settling parties from asserting direct claims against a settling party).

**(7) The extent to which the settlement is the product of arm's length bargaining**

Trustee's counsel, and the Debtor's Principal's counsel negotiated the terms of the Settlement Agreement. Motion ¶ 34. The parties agree that the Settlement Agreement was the product of "highly contested, arm's-length negotiations." Settlement Agreement ¶ 16. There is nothing to suggest that the negotiations or agreement were not conducted at arm's-length. The Court finds this factor supports approval of the settlement. *See In re Dewey & LeBoeuf LLP*, 478 B.R. at 644 (finding the settlement was the product of arm's-length bargaining when the agreement was developed by "independent professionals" with substantial experience in similar bankruptcy cases); *In re Genesis Glob. Holdco, LLC*, 660 B.R. 439, 494 (Bankr. S.D.N.Y. 2024) ("the settlement is clearly the product of arms' length negotiations, as is clear from the history of the extensive and complex negotiations and the disparate positions taken by the parties.").

11

The Court has canvassed the issues and apprised itself of the relevant facts of the Settlement Agreement, and after consideration of each of the *Iridium* Factors, the Trustee's business judgment, and the general policy favoring settlement, concludes that the Settlement Agreement is fair and equitable and in the best interests of the Estate, falling well above the lowest point in the range of reasonableness. The Court approves the Settlement Agreement.

## **CONCLUSION**

Based on the foregoing, the Court grants the Motion. The Trustee is directed to submit an order.

Dated: November 13, 2024
    New York, New York

/s/ *James L. Garrity, Jr.*
Honorable James L. Garrity, Jr.
United States Bankruptcy Judge